UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| INTERNATIONAL INSTITUTE OF MANAGEMENT,<br><br>　　　　Plaintiff,<br>　v.<br>ORGANIZATION FOR ECONOMIC COOPERATION AND DEVELOPMENT, *et al*.,<br><br>　　　　Defendants. | Case No. 2:18-cv-01748-JCM-GWF<br><br>ORDER |

Presently before the court is defendants Joseph Stiglitz and the Organization for Economic Cooperation and Development's ("OECD") joint motion for attorney's fees and taxable and nontaxable costs. (ECF No. 67). Plaintiff International Institute of Management ("IIM") filed a response (ECF No. 71), to which defendants replied (ECF No. 72).

**I.　　Background**

This was a copyright infringement action in which IIM alleged that the OECD, a Paris-based intergovernmental organization for economic research and policy, and Stiglitz, a Nobel laureate and professor of economics at Columbia University, stole credit for IIM's work on using non-GDP factors to measure the well-being of countries. (ECF No. 1).

IIM is a small Nevada think tank that publishes economics papers on the internet. *Id*. In 2005, IIM published a two-page paper titled "Gross National Well-being (GNW) Index" ("2005 paper"). *Id*. The 2005 paper generally discusses the idea of using non-GDP factors to measure the well-being of countries and provides seven factors that such an index might use. (ECF No. 23-2). The 2005 paper does not show how to use these factors to measure a country's well-being. *Id*.

In 2006, IIM published a second paper titled "The American Pursuit of Unhappiness" ("2006 paper"). (ECF No. 1). The 2006 paper is six pages long and generally discusses why a nation's happiness should be measured with non-GDP factors. (ECF No. 23-3). The paper also elaborates on non-GDP factors that various measurement approaches might use. *Id*. Like the 2005 paper, the 2006 paper does not provide any solution on how to measure the well-being of countries with non-GDP factors. *Id*.

The OECD's Commission on the Measurement of Economic Performance and Social Progress (the "commission") conducts research on measuring the well-being of countries. (ECF No. 1). Stiglitz, who is a resident of New York, is the chairman of the commission and substantially contributed to various reports and articles that the commission published. *Id*.

In 2009, the commission published a 291-page report titled "Report by the Commission on the Measurement of Economic Performance and Social Progress" ("2009 report"). (ECF Nos. 1, 23-4). Twenty-two commissioners, five of whom are Nobel laureates, wrote the 2009 report, which discusses the limits of GDP as an indicator of economic performance. (ECF No. 23-4). The report also extensively addresses problems with various measurement techniques and how to improve upon existing methods to determine the well-being of countries. *Id*.

In 2011, the OECD created the Better Life Index, which uses non-GDP factors to measure the well-being of countries. (ECF No. 23-5). The OECD published the index on the internet on an interactive website that millions of people have used to compare the well-being of countries. *Id*. According to the complaint, Stiglitz is also selling a book on Amazon.com which contains material from IIM's copyright protected works. (ECF No. 1). IIM alleges that the 2009 report, the Better Life Index, and Stiglitz' book infringe on its copyrights in the 2005 and 2006 papers. *Id*.

On September 10, 2018, IIM initiated this action, asserting four causes of action: (1) copyright infringement; (2) vicarious and/or contributory copyright infringement; (3) unfair competition; and (4) false advertising in violation of the Lanham Act. *Id.* On June 20, 2019, the court granted defendants' motions to dismiss (ECF Nos. 19, 21) and dismissed this action without prejudice for a lack of personal jurisdiction over defendants (ECF No. 64).

Now, defendants move for the award of attorney's fees and taxable and nontaxable costs. (ECF No. 67).

**II.     Legal Standard**

The Copyright Act provides that "the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof." 17 U.S.C. § 505. The court may "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Section 505 grants district courts "broad leeway" in considering motion's for attorney's fees. *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). However, courts must employ a case-by-case analysis and encourage meritorious defenses to the same extent they encourage meritorious copyright claims. *Fogerty*, 510 U.S. at 518.

In considering whether to award attorney's fees under Section 505, a district court may consider a nonexclusive list of factors, which include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014); *see also Fogerty*, 510 U.S. at 539 n. 19. A district court should give substantial weight to the objective reasonableness factor. *Kirtsaeng*, 136 S. Ct. at 1988. Courts in the Ninth Circuit also consider "the degree of success obtained on the claim" and "whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious plaintiff." *VMG Salsoul, LLC v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016); *Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 766 (9th Cir. 2003).

The Lanham Act also provides for the award of attorney's fees to the prevailing party, though such an award is warranted only in "exceptional cases." 15 U.S.C. § 1117. A district court analyzing a request for attorney's fees under the Lanham Act considers the "'totality of the circumstances' to determine if the case was exceptional, exercising equitable discretion in light of the nonexclusive factors identified in *Octane Fitness* and *Fogerty*, and using a preponderance of the evidence standard." *SunEarth, Inc. v. Sun Earth Solar Power Co., Ltd.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (internal citations omitted). An "'exceptional' case is simply one that stands out

from others with respect to the substantive strength of a party's litigating position ... or the unreasonable manner in which the case was litigated." *Memory Lane, Inc. v. Classmates, Inc.*, 646 Fed. Appx. 502, 504 (2016).

Both the Copyright Act and Lanham Act permit courts to award attorney's fees to a "prevailing party." 17 U.S.C. § 505; 15 U.S.C. § 1117. A prevailing party does not need to obtain a ruling on the merits to obtain attorney's fees. *CRST Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016) (finding that "[t]here is no indication that Congress intended that defendants should be eligible to recover attorney's fees only when courts dispose of claims on the merits"); *see also Amphastar Pharm., Inc. v. Aventis Pharma SA*, 856 F.3d 696, 710 (9th Cir. 2017) ("we conclude that the Supreme Court has effectively overruled *Branson*'s holding that when a defendant wins because the action is dismissed for lack of subject matter jurisdiction he is never a prevailing party.").

**III.    Discussion**

As a preliminary matter, IIM argues that defendants do not satisfy the "prevailing party" requirement of the Copyright Act, and thus cannot recover attorney's fees. (ECF No. 71). Specifically, IIM contends that only a judgment on the merits can give rise to attorney's fees under Section 505, and that "there is no prevailing party in a Copyright Act case when the case is voluntarily dismissed without prejudice." *Id*.

These arguments are without merit. Following the Supreme Court's decision in *CRST Van Expedited*, a defendant is not required to obtain a favorable judgment on the merits in order to recover attorney's fees. 136 S. Ct. at 1646. Further, nothing in *CRST Van Expedited* indicates that a dismissal without prejudice necessarily changes the calculus. Nonmerits dismissals are often without prejudice, and this fact appears to have had no effect on the determination that a defendant may prevail where "the court's final judgment rejects the plaintiff's claim for a nonmerits reason." *Id*. at 1651.

Here, the court dismissed this action without prejudice based on a lack of personal jurisdiction over defendants. Defendants have thus successfully rebuffed IIM's challenge in this action. Accordingly, the court finds that defendants have satisfied the "prevailing party"

requirement of Section 505 of the Copyright Act.

*a. Attorney's fees under the Copyright Act*

The following factors weigh in favor of awarding attorney's fees here: objective unreasonableness, degree of success obtained, absence of chilling effect, and the need to advance considerations of compensation and deterrence.

*1. Objective unreasonableness*

A claim is objectively unreasonable where the party advancing it "should have known from the outset that its chances of success in th[e] case were slim to none." *SOFA Entm't v. Dodger Prods., Inc.*, 709 F.3d 1273, 1280 (9th Cir. 2013). "A claim that is not 'objectively unreasonable' at the outset can become so if the litigant continues to pursue it when the litigant knew or should have known that the chance of success was slim to none." *Erickson Productions Inc. v. Kast*, No. 5:13-cv-05472-HRL, 2016 WL 3951659, at *2 (N.D. Cal. July 22, 2016) (citation omitted).

IIM sought to hale a New York citizen and a foreign organization into a Nevada federal court based on the bare allegations that defendants operated the Better Life Index on a website, sold a book with allegedly infringing materials on Amazon.com, and published the 2009 report online. (ECF No. 1). In granting defendants' motions to dismiss, the court found that "the complaint does not contain any allegations of specific conduct related to Nevada other than IIM's contacts with the forum." (ECF No. 64). Based on unambiguous Ninth Circuit authority, the court also held that "merely uploading materials on a passive website and placing products in the stream of commerce are not affirmative acts that directly target Nevada." *Id*.

IIM's attempt to establish personal jurisdiction based on these allegations had slim to no chance of success. Accordingly, the court finds that this suit was legally objectively unreasonable.

*2. Degree of success obtained*

Although defendants did not obtain a substantive judgment on the merits, they were successful insofar as this suit was dismissed for a lack of personal jurisdiction. This dismissal does not bar IIM from refiling in another jurisdiction, but it does terminate further litigation in Nevada. While this is likely not defendants' preferred outcome, it is without question that they have obtained at least a modicum of success in having this action dismissed.

*3. Chilling effect*

IIM has not alleged that it lacks the resources to pay an award or that it will be deterred from seeking to enforce valid copyrights in the future. Rather, IIM argues that "[w]ithout protection from retaliation against good-faith and non-merit issues, few, if any, of the victims of copyright infringement … will come forward to claim their right, and the end result will be increased infringement and decreased incentive to invest in creating new works when dealing with defendants with large pockets." (ECF No. 71).

The court finds this argument unavailing. That this case may have been brought in good faith and was not dismissed on the merits has little bearing on whether victims of copyright infringement will continue to bring suit. An award of attorney's fees here serves only to discourage suits without an objectively reasonable basis for jurisdiction.

Accordingly, the court holds that an award of attorney's fees here will not have a chilling effect on a plaintiff's ability to litigate meritorious claims of infringement. The court further holds, in light of IIM's failure to allege any financial hardship, that it would not be inequitable to award fees here.

*4. Compensation and deterrence*

"A successful defense furthers the purposes of the Copyright Act just as much as a successful infringement suit does." *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1043 (9th Cir. 2014). An award of attorney's fees may enable parties to pursue successful defenses by ensuring that the litigation cost of vindication does not exceed the prevailing party's private benefits. *See Sophia & Chloe, Inc. v. Brighton Collectibles, Inc.,* No. 12-cv-2472-AJB-KSC, 2019 WL 1429588, at *5 (S.D. Cal. Mar. 29, 2019) (citing *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004).

Here, as is stated above, IIM's suit was objectively unreasonable. An award of attorney's fees will thus serve the interest of deterring such suits. Moreover, nothing in the record indicates that defendants have received any financial benefit from successfully defending this suit. Under these circumstances, the Copyright Act's interest in encouraging defendants to vigorously defend against an infringement suit would not be properly furthered absent an award of attorney's fees.

Therefore, an award of attorney's fees in this case furthers the goals of the Copyright Act.

In consideration of the foregoing factors, the court holds that an award of attorney's fees is appropriate.

b. *Attorney's fees under the Lanham Act*

Having now found that attorney's fees are warranted under the Copyright Act, the court declines to assess whether attorney's fees would also be warranted under the Lanham Act's "exceptional case" standard.

c. *Reasonableness of attorney's fees*

"When calculating the amount of attorney fees to be awarded in litigation, the district court applies the lodestar method, multiplying the number of hours expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d 754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The reasonableness of the requested fee is then determined with reference to the twelve *Kerr* factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975). A district court may reduce the amount of requested fees to reflect a party's limited degree of success, to account for block billing, or to deduct hours deemed excessive as long as it provides an adequate explanation for its fee calculation. *Ryan*, 786 F.3d at 763.

A party moving for attorney's fees must also meet the requirements set forth in Local Rule 54-14, which states in part:

> (b) Content of Motions. Unless the court orders otherwise, a motion for attorney's fees must include the following in addition to those matters required by Fed. R. Civ. P. 54(d)(2)(B):
> (1) A reasonable itemization and description of the work performed;
> (2) An itemization of all costs sought to be charged as part of the fee award and not otherwise taxable under LR 54-1 through 54-13;
> (3) A brief summary of:

> (A) The results obtained and the amount involved;
> (B) The time and labor required;
> (C) The novelty and difficulty of the questions involved;
> (D) The skill requisite to perform the legal service properly;
> (E) The preclusion of other employment by the attorney due to acceptance of the case;
> (F) The customary fee;
> (G) Whether the fee is fixed or contingent;
> (H) The time limitations imposed by the client or the circumstances;
> (I) The experience, reputation, and ability of the attorney(s);
> (J) The undesirability of the case, if any;
> (K) The nature and length of the professional relationship with the client;
> (L) Awards in similar cases; and
> (M) Any other information the court may request.

LR 54-14(b).

Further, a motion for attorney's fees and costs must be accompanied by an affidavit from the attorney responsible for the billings in the case to authenticate the information contained in the motion, and to prove that the fees and costs sought are reasonable. LR 54-16(c). A failure to provide the documentation required by LR 54-16(b) and (c) in a motion for attorney's fees "constitutes a consent to the denial of the motion." LR 54-16(d).

*1. Reasonableness of time expended*

Stiglitz requests attorney's fees in the amount of $79,897.50 for 162.8 hours spent by counsel on this matter. (ECF Nos. 67, 68). The OECD requests attorney's fees in the amount of $119,922.50 for 145.1 hours spent by counsel, 2.4 hours spent by a paralegal, and .5 hours spent by research analysts. (ECF Nos. 67, 69). Both defendants have submitted attorney declarations and summaries of the work performed by each attorney (including hours billed and hourly rates). (ECF Nos. 68, 69).

A reasonable number of hours expended is equivalent to the number of hours an attorney reasonably could have billed to a private client. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013). The prevailing party bears the burden of submitting billing records to establish that the hours requested are reasonable. *Id*.

If the court determines some requested fees should be excluded as unreasonable, it may do so using one of two methods. *Id*. at 1203. First, the court may exclude billed entries pursuant to an "hour-by-hour analysis of the fee request." *Id*. Alternatively, "when faced with a massive fee

application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of [excluding non-compensable hours] from a fee application." *Id*. (internal quotation marks omitted).

When cutting by a percentage, the court must clearly explain its reasons for "choosing a given percentage reduction," with one exception. *Id*. The court may impose a "small reduction, no greater than 10 percent—a 'haircut'—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). "In all other cases, however, the district court must explain why it chose to cut the number of hours or the lodestar by the specific percentage it did." *Gonzalez*, 729 F.3d at 1203.

Stiglitz' submitted a summary of the work counsel performed, which included researching issues of law, conferring with co-counsel and the client, drafting the motion to dismiss and reply in support, drafting the motion to stay discovery and the reply in support, and participating in argument. (ECF No. 68-1). The OECD also submitted a summary of work performed by counsel, a paralegal, and two research analysts. (ECF No. 69-2). The summary included generally the same entries for counsel as Stiglitz' summary, as well as entries for cite checking by a paralegal and legal research regarding "telephonic appearance" and "motion to stay discovery" by two research analysts. *Id*.

Upon review of the billing summaries, the court finds that the total hours billed constitute an unreasonable amount of time spent defending this litigation. This is because both defendants' summaries of work performed state the hours of each individual in a single, large increment of time. This has made it difficult for the court to parse which hours are properly compensable. As a result, the court will reduce both defendants' lodestar amount (as is determined below) by 10%. *See Moreno*, 534 F.3d at 1112; *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000) (holding that where the billing records submitted are inadequate, the court may "simply reduce[] the fee to a reasonable amount").

2. *Reasonableness of hourly rate*

The court finds that defendants' counsels' hourly rates ranging from $650 for Stiglitz and $840 to $1,265 for the OECD are unreasonable. The controlling test for determining a reasonable

hourly rate requires the rate to be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 896 n. 11 (1984); *Welch v. Metro. Life Ins Co.*, 480 F.3d 942, 946 (9th Cir. 2007). As a general rule, the court considers the reasonable hourly rate in the relevant community, which is the forum in which the case is pending. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The court may consider rates outside the forum "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case." *Id.* (quoting *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)).

Here, the relevant community is Las Vegas, Nevada. For the Las Vegas market, this court has regularly awarded fees where the hourly rates at issue were $400 or less. *See, e.g., Snow v. McDaniel*, No. 3:08-cv-00046-RCJ-VPC, 2014 WL 590489, at *1 (D. Nev. Feb. 14, 2014) (Jones, J.) (finding a $250 hourly rate reasonably within the context of a section 1988 inquiry); *see also Gibbs v. Rivers Transp. Group, Inc.*, No. 2:13-cv-00935-JAD-NJK, 2014 WL 204928, at *3 (D. Nev. Jan. 17, 2014) (finding a $250 hourly rate reasonable in Las Vegas); *Marrocco v. Hill*, 291 F.R.D. 586, 589 (D. Nev. 2013) (finding hourly rates between $375 and $400 reasonable in Las Vegas); *Conboy v. Wynn Las Vegas, LLC*, No. 2:11-cv-01649-JCM-CWH, 2012 WL 6100313, at *3 (D. Nev. Dec. 7, 2012) (finding a $350 hourly rate reasonable in Las Vegas); *Am. Gen. Life Ins. Co. v. Futrell*, No. 2:11-cv-00977-PMP-CWH 2012 WL 5497901, at *3 (D. Nev. Nov. 13, 2012) (finding hourly rates between $250 and $400 reasonable in Las Vegas).

Accordingly, the court finds that the $650 hourly rate billed by Stiglitz attorney William Forman, the $1,265 hourly rate billed by OECD attorney Kristin Linsley, and the $900 hourly rate billed by OECD attorney Joseph Tartakovsky represent an unreasonable hourly rate for this litigation.[1] The court holds that an hourly rate of $400 is reasonable for this type of case in the

---

[1] In an affidavit submitted with the instant motion, OECD attorney Joseph Tartakovsky states that his standard billing rate in 2018 was $840 per hour, and that in 2019 his billing rate increased to $900 per hour. He also states that attorney Kristin Linsley's standard billing rate in 2018 was $1,205 per hour, and that in 2019 her billing rate increased to $1,265 per hour. (ECF No. 69). Because all of these hourly rates are unreasonable in this litigation, the court will reduce the 2018 and 2019 hours of both attorneys to an hourly rate of $400.

Las Vegas market, and will thus reduce Forman, Linsley, and Tartakovsky's rates accordingly. The court further holds that Jeffrey Steinfeld's hourly rate of $400, David Avakian's hourly rate of $375, and Jesse Panof's hourly rate of $375 are reasonable.

The OECD has provided no evidence of the prevailing market rate for paralegal or research analyst services. The OECD has also failed to provide any information on the qualifications of the paralegal or research analysts that it seeks reimbursement for.

An attorney's fees award may include paralegal fees. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 284 (1989); *see also Agarwal v. Oregon Mut. Ins. Co.*, 2013 WL 5882710, at *3 (D. Nev. Oct. 30, 2013) (awarding fees for paralegal work). For the Las Vegas market, paralegals are typically paid between $75 to $125 per hour. *See Watson v. NCO Fin. Sys., Inc.*, 2015 WL 1959163, at *2 (D. Nev. Apr. 29, 2015) (finding a $125 hourly rate to be reasonable); *Tallman v. CPS Sec. (USA), Inc.*, 23 F.Supp.3d 1249, 1260 (D. Nev. 2014) (finding a $90 hourly rate to be reasonable); *Agarwal*, 2013 WL 5882710, at *2 (finding a $75 hourly rate to be reasonable); *Plaza Bank v. Alan Green Family Trust*, 2013 WL 1759580, at *2 (D. Nev. Apr. 24, 2013) (finding a $100 hourly rate to be reasonable).

Given the OECD's failure to present competent evidence of the prevailing Las Vegas rate for paralegals and research analysts or any description of their experience, the court finds that an hourly rate of $75 for the paralegal and $50 for the analysts is reasonable.

*3. Lodestar calculation*

The lodestar calculation is as follows:

**Stiglitz Counsel**

William Forman: 62.30 hours x $400 = $24,920.00

Jeffrey Steinfeld: 68.60 hours x $400 = $27,440.00

David Avakian: 27.4 hours x $375 = $10,275.00

Jesse Panof: 4.5 hours x $375 = $1,687.50

**Total Hourly Fees:** $64,322.50

///

///

**OECD Counsel/Paralegal/Research Analysts**

Kristin Linsley: 25.2 hours x $400 = $10,080.00

Joseph Tartakovsky: 119.9 hours x $400 = $47,960.00

Eaton Liu (paralegal): 2.4 hours x $75 = $180.00

Erin Kurinsky (litigation research manager): 0.3 hours x $50 = $15.00

Carla Jones (research analyst): 0.2 hours x $50 = $10.00

**Total Hourly Fees:** $58,245.00

A "strong presumption" exists that the "lodestar" figure represents a reasonable fee. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). Defendants have not identified any persuasive reason as to why the lodestar amount should be adjusted. Further, defendants have provided no evidence that local counsel lacks the experience, expertise, or specialization necessary to handle this case, such that the court should look beyond Las Vegas to determine the lodestar amount.

*4. Summary of attorney's fees awards*

The lodestar amount for Stiglitz is $64,322.50. The court reduces this amount by 10% due to the insufficiency of the billing records before the court, resulting in a total fee award of $57,890.25.

The lodestar amount for the OECD is $58,245.00. The court reduces this amount by 10% due to the insufficiency of the billing records before the court, resulting in a total fee award of $52,420.50.

The court finds no reason to depart from either of these presumptively reasonable awards.

*d. Taxable and non-taxable costs*

In addition to an award of attorney's fees, defendants also request the award of taxable and non-taxable costs in the amount of $82.07 for Stiglitz and $4,432.80 for the OECD. (ECF No. 67). IIM does not oppose this request. (ECF No. 71 at 3–4). The court will therefore award the requested taxable and non-taxable costs to defendants.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' joint motion for attorney's fees and taxable and nontaxable costs (ECF No. 67) be, and the same hereby is, GRANTED, consistent with the foregoing.

IT IS FURTHER ORDERED that IIM shall pay Stiglitz $57,890.25 in attorney's fees and $82.07 in taxable and nontaxable costs, for a sum total award of $57,972.32.

IT IS FURTHER ORDERED that IIM shall pay the OECD $52,420.50 in attorney's fees and $4,432.80 in taxable and nontaxable costs, for a sum total award of $56,853.30.

IT IS FURTHER ORDERED that within fourteen (14) days of the date of this order, the defendants shall submit a proposed judgment consistent with the foregoing.

DATED THIS 29th day of October 2019.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE